UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO DIVISION

| | |
|---|---|
| In re: <br><br> ISOFOTÓN, S.A., <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 13-33826 <br><br> Judge _____ |

### DECLARATION OF JOSÉ MANUEL GONZÁLEZ QUINTANA, AS REPRESENTATIVE OF CONCURSALIA, S.L.P., IN SUPPORT OF CHAPTER 15 PETITION AND RECOGNITION OF FOREIGN PROCEEDING OF ISOFOTÓN, S.A., AND PROVISIONAL RELIEF UNDER 11 U.S.C. § 1519

I, José Manuel González Quintana, as a representative of Concursalia, S.L.P. (the "*Foreign Representative*"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am an individual, authorized representative of the Foreign Representative, which was appointed by the Mercantile Court (*Juzgado de lo Mercantil*) No. 2 in Málaga, Spain (the "*Foreign Court*") presiding over the voluntary insolvency proceeding (*concurso voluntario de acreedores*) No. 514/2013 (the "*Foreign Proceeding*") of Isofotón, S.A. (the "*Foreign Debtor*" or "*Isofotón*"), a company organized under the laws of Spain. As an individual authorized to act on behalf of the Foreign Representative, I am familiar with the Foreign Debtor and the Foreign Proceeding presently pending before the Foreign Court.

2. I submit this Declaration in support of the chapter 15 petition filed concurrently herewith (the "*Petition*") seeking recognition of the Foreign Proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "*Bankruptcy Code*") and the *ex parte* motion filed concurrently herewith seeking certain provisional, injunctive relief pursuant to section 1519 of the Bankruptcy Code.

3226286-v5\

3. I am an individual over the age of 18 and, if called upon, could testify to all matters set forth in this Declaration.

4. The Foreign Representative is a limited liability company, which was incorporated in Spain in December 2011. The Foreign Representative provides legal, economic, and auditing services. The Foreign Representative regularly serves as an insolvency administrator. I am a lawyer and tax adviser employed by the Foreign Representative. I specialize in bankruptcy proceedings, and often serve as an individual representative of insolvency administrators.

## BACKGROUND

### A. The Foreign Debtor.

5. The Foreign Debtor is a private corporation incorporated in 1981 under the laws of Spain, headquartered in and managed from Calle Severo Ochoa, 5 Parque Tecnológico de Andalucía, 29590, Málaga, Spain. The Foreign Debtor has two shareholders: Affirma Energy Engineering and Technology, S.L. ("*Affirma*"), a company organized under the laws of Spain and headquartered in Madrid, Spain, which holds 81.25% of the shares in the Foreign Debtor; and Top Tec Co., Ltd., a public company organized under the laws of South Korea and headquartered in Gumi, South Korea, which holds the remaining 18.75% of the shares in the Foreign Debtor.

6. The Foreign Debtor designs, manufactures, and supplies solar energy products globally. The Foreign Debtor is the seventh largest solar manufacturer in the world and second largest solar manufacturer in Europe. The Foreign Debtor has three business lines: production of conventional photovoltaic modules and trackers; production of high concentration modules (HCPV); and execution of photovoltaic projects. These business lines are described below.

13-33826-maw    Doc 4    FILED 09/16/13    ENTERED 09/16/13 15:59:47    Page 2 of 7

- ***Conventional Photovoltaic Modules and Trackers***: Conventional photovoltaic modules are distributed independently or together with single/dual axis trackers, developed by Affirma. Installations of modules with trackers guarantee the maximum use of solar radiation in all weather conditions. Power output increases up to 42% in comparison to modules without trackers.

- ***High Concentration Modules (HCPV):*** The Foreign Debtor is a pioneer in the development of high concentration photovoltaic technology. High concentration modules guarantee an increased power output of almost 50% in locations of high levels of solar irradiation.

- ***Photovoltaic Projects***: The Foreign Debtor also develops solar energy projects in rural and urban areas around the world, including solar farms, rooftops and canopies, and photovoltaic energy solutions for homes and businesses.

7. Over the last five years, Isofotón has experienced growing financial problems due to changes in the renewable energy sector generally. Recently, these financial difficulties came to a head when negotiations to refinance Isofotón's debt failed, the Spanish government demanded return of certain subsidies received by Isofotón's former owners, and Isofotón was sued for $96 million by Hemlock Semiconductor Group ("***Hemlock***").

8. The financial crisis caused a decline in energy project investment generally, and in particular, investment in the global renewable energy sector. In addition, growing competitive pressure from Asia has led to a significant fall in solar energy prices at global level of approximately 25% in the last five years.

9. For Isofotón, this has not only led to a decline in revenue generated with existing customers, but also a loss of customers to lower-cost manufacturers. From 2011 to 2012, the Foreign Debtor saw a 17% decline in power output (the most relevant metric of the company's productivity). Despite the decreased power output, the Foreign Debtor's overhead costs, including employee pay and benefits, has remained relatively consistent. For example, employee costs accounted for only 11% of sales in 2008, but now account for approximately 55% of sales. The Foreign Debtor experienced a 90% decline in profits as a percentage of sales from 2011 to

13-33826-maw    Doc 4    FILED 09/16/13    ENTERED 09/16/13 15:59:47    Page 3 of 7

2012 and a 89% decline in profits as a percentage of sales from 2012 to the first quarter of 2013. The inability to obtain concessions from suppliers and lenders in early 2013 has exacerbated the Foreign Debtor's financial problems.

10. In addition, on May 16, 2013, the regional government of Andalucía, which supported the Foreign Debtor with various subsidies before the company was acquired by Affirma in 2010, requested that Isofotón return those subsidies in an approximate amount of 5.7 million euros plus interest.

11. Finally, the action commenced against the Foreign Debtor by Hemlock could have a significant impact on the Foreign Debtor's financial condition. The Hemlock litigation stems from a 2005 supply contract between Hemlock, the Foreign Debtor, and another third party, Global Sun Ltd. ("**Global Sun**"). Pursuant to the supply contract, Hemlock directly supplied polysilicon to Global Sun, which in turn supplied polysilicon wafers to Spanish polysilicon producer Silicio Solar, which then supplied photovoltaic cells to Isofotón to develop its panels. The Foreign Debtor guaranteed the obligations of Global Sun in certain circumstances. Upon Global Sun's failure to timely pay Hemlock, Hemlock filed a suit against both Global Sun and the Foreign Debtor in the United States Federal District Court for the Eastern District of Michigan on April 26, 2013, asserting a claim for $96 million against Global Sun as the primary obligor and Isofotón as guarantor. The Foreign Debtor's answer in such litigation is currently due on September 18, 2013.

12. It is my belief that if creditors in the U.S. are not enjoined from commencing or continuing actions against the Foreign Debtor during the pendency of the Court's ruling on the Petition, the assets of the Foreign Debtor in the United States may be prematurely "pieced out" and "the orderly determination of claims and the fair distribution of assets" in the foreign

13-33826-maw    Doc 4    FILED 09/16/13    ENTERED 09/16/13 15:59:47    Page 4 of 7

proceeding will be severely disrupted. In addition, defending litigation here in the U.S. would certainly require the Foreign Representative and/or Foreign Debtor to expend resources that could otherwise be directed towards its reorganization efforts in the Foreign Proceeding, especially in the case of the litigation commenced by Hemlock.

B.     **The Foreign Proceeding.**

13.    On or about June 4, 2013, a petition for voluntary bankruptcy of the Foreign Debtor was presented to the Foreign Court. Subsequently, on June 10, 2013, the Foreign Court declared the Foreign Debtor insolvent and appointed the Foreign Representative as bankruptcy administrator (*administrador concursal*) to oversee the Foreign Debtor. A copy of the order entered by the Foreign Court commencing the Foreign Proceeding and appointing the Foreign Representative is attached hereto as **Exhibit A**. A declaration certifying that the English version of such order is a true and accurate translation is attached hereto as **Exhibit B**. The Foreign Representative is independent from, and otherwise totally unrelated to, the Foreign Debtor, its affiliates and any of its former officers and directors. The Foreign Court also appointed Deloitte, S.L. as an auxiliary delegate (*auxiliar delegado*) to support the Foreign Representative given the size of the company, the fact that the Foreign Representative has many subsidiaries, and that there are disputes involving the Foreign Debtor outside of Spain.

14.    Since its appointment, the Foreign Representative has, under my direction: (i) circulated letters to known creditors notifying them of the commencement of the Foreign Proceeding before the Foreign Court; (ii) reviewed the information and documents provided by the Foreign Debtor together with its filing for bankruptcy or that has been made available to the Foreign Representative thereafter; and (iii) assessed the authorization or approval of any act that has involved the disposition or administration of the Foreign Debtor's assets. The Foreign

Representative has also commenced the analysis necessary to prepare a report, which will include an inventory of the Foreign Debtor's assets, a list of its creditors, and the Foreign Representative's assessment of the financial and accounting situation of the Foreign Debtor.

## SUMMARY OF SPANISH INSOLVENCY PROCEEDINGS

15. In Spain, insolvency law contemplates that bankruptcy proceedings can be either "voluntary" (*i.e.*, when it is the debtor itself that has filed for its bankruptcy) or "necessary" (*i.e.*, when it has been a creditor that has filed for the debtor's bankruptcy). In the Foreign Debtor's case, the Foreign Proceeding is a "voluntary" proceeding. In the case of a Spanish voluntary bankruptcy, the debtor maintains its powers of disposition and administration of its assets, subject to the approval or authorization of the "bankruptcy administrator" (*administrador concursal*), here, the Foreign Representative.

16. Bankruptcy proceedings in Spain can lead to two possible scenarios: (i) the approval by the bankruptcy court of a settlement of creditors (*convenio de acreedores*), which may contemplate a stay and/or reduced payments to creditors in full satisfaction of the debts owed by the debtor; or (ii) the liquidation of the debtor.

17. Liquidation (*fase de liquidación*) will be automatically initiated if: (i) no agreement is reached with creditors; (ii) the settlement reached is not ultimately approved by the bankruptcy court, or (iii) in case of non-compliance by the debtor with the settlement agreement.

18. A voluntary Spanish bankruptcy proceeding is initiated with the filing of an application for commencement of a bankruptcy proceeding by the debtor. If the judge adjudges the debtor to be insolvent or imminently insolvent, the judge appoints the bankruptcy administrator (*administración concursal*). The bankruptcy administrator then prepares a report that includes a listing of all the debtor's assets, liabilities and creditors, and the bankruptcy

13-33826-maw    Doc 4    FILED 09/16/13    ENTERED 09/16/13 15:59:47    Page 6 of 7

administrator's assessment of the financial and accounting situation of the debtor. Such report has to be submitted to the bankruptcy court within two months after the acceptance by the administrator of its role, although an extension of such deadline can be granted by the bankruptcy court under certain circumstances.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of September in Malaga, Spain

_____
José Manuel González Quintana